A00A1322. GCA STRATEGIC INVESTMENT FUND, LTD.
v. JOSEPH CHARLES & ASSOCIATES, INC. et al.
(537 SE2d 677)

MIKELL, Judge.

GCA Strategic Investment Fund Limited ("GCA") purchased 2,000 shares of preferred stock in Integrated Medical Resources, Inc. ("IMRI") three weeks before IMRI declared bankruptcy. GCA sued the seller and broker alleging, inter alia, fraud and misrepresentation. The trial court dismissed the complaint for failure to state a claim upon which relief can be granted, and GCA appeals. We affirm as to the seller but reverse as to the broker.

Construed most favorably to GCA, the complaint shows that GCA purchased a portfolio of five securities, including the IMRI stock, for $2.8 million. The sale was governed by a Securities Purchase Agreement ("Agreement") executed by GCA and the seller, ProFutures Special Equities Fund, L.P., as represented by ProFutures Fund Management, Inc. and its president, Gary D. Halbert. Barry Hayut, a registered representative of Joseph Charles & Associ-

ates, Inc., ("broker") brokered the transaction on behalf of the seller but did not execute the Agreement.

Shortly after IMRI became insolvent, GCA demanded rescission of the sale of the IMRI securities. GCA tendered the IMRI shares to the seller and requested payment of $1.3 million. In its complaint GCA alleged that it paid $1.6 million for the IMRI stock. The Agreement did not specify a separate price for any of the five securities.

GCA's demand was declined, prompting this suit against the broker,[1] the seller, the seller's general partners, and the partners' principals (collectively "seller"). GCA asserted five counts against all defendants: violation of the Georgia Securities Act,[2] common law fraud, negligent misrepresentation, conspiracy, and attorney fees. GCA also claimed breach of contract, conversion, and rescission against the seller. A consent order was entered dismissing the breach of contract and conversion counts and the claim for attorney fees insofar as it related to those counts. Therefore, in this appeal we are concerned with only the remaining claims.

The complaint alleged as follows: the seller purchased the IMRI stock on July 15, 1998; IMRI's financial condition substantially worsened thereafter; the seller, knowing that IMRI desperately needed an infusion of cash, "decided to unload the Preferred Stock before IMRI was forced to declare bankruptcy"; the seller retained the broker to find a buyer, and the broker approached GCA; and during the negotiations, the broker told GCA that IMRI "was the best company it had in its portfolio, and that it had good management."

1. The trial court did not err in ruling that the Agreement barred GCA's tort claims against the seller.

> The general rule is that an attack upon a complaint for failure to state a claim upon which relief can be granted should not be sustained unless the averments in the complaint disclose with certainty that plaintiff would not be entitled to relief under any state of facts that could be shown in support of the claim. But here plaintiff relies upon the written . . . agreement, a copy of which is attached to the complaint as an exhibit.[3]

"Where a party relies on a written instrument as the basis of an action, and attaches a copy of the instrument as an exhibit, the facts shown in the exhibit will prevail over the allegations of the party in

---

[1] Hayut has never been served and thus is not a party.

[2] OCGA § 10-5-12 (a).

[3] (Citation omitted.) *Sitzer v. Lang*, 145 Ga. App. 159 (243 SE2d 95) (1978).

the pleading."[4]

The Agreement, which GCA attached to its complaint, contains five relevant provisions. First, GCA warranted that it was an "accredited investor" and a "qualified purchaser" as defined by federal securities regulations.[5] Second, GCA warranted that it was given access to, and an opportunity to inspect, all relevant financial information that it deemed necessary to make an informed investment judgment. Third, GCA represented that it possessed a level of knowledge and experience sufficient to render it capable of evaluating the merits and risks of the investment and that it could afford to bear the risk of losing the entire investment. Fourth, GCA agreed that the seller made no representation or warranty as to the performance of the securities. Finally, GCA and the seller agreed that the Agreement set forth the entire understanding of the parties and could not be altered or revised except by a writing signed by both parties.

A party who was fraudulently induced by misrepresentations into entering into a contract may elect one of two actions: affirm the contract and sue to recover damages for its breach or rescind the contract and sue in tort to recover the contract's consideration as well as damages for fraud.[6] However, if the party elects to affirm the contract, he or she is bound by its terms. As such, the contract's merger clause estops the party from asserting that he or she relied upon representations not contained in the contract.[7]

Relying on *Meason v. Gilbert*,[8] GCA argues that the Agreement's merger clause cannot bar its tort claims. In *Meason*, the Supreme Court of Georgia found unenforceable a stock purchase agreement's merger clause which stated that no representations other than those contained in the prospectus induced the purchaser to buy certain securities. The purchaser alleged that he had been induced to buy the securities by fraudulent oral misrepresentations. The Supreme Court held that to allow a purchaser to waive all violations of the Georgia Securities Act by contract would eviscerate the protections of that Act and that such a waiver would be void.[9]

*Meason* is distinguishable for the reason that the purchaser in *Meason* sought rescission of the contract. In the instant case, however, GCA sought to rescind only the purchase of IMRI stock, while retaining the benefits of the remainder of the Agreement. In fact, GCA originally sued for breach of contract to recover dividends paya-

---

[4] *H & R Block v. Asher*, 231 Ga. 780, 781 (204 SE2d 99) (1974).

[5] See 17 CFR § 230.501 (a); 15 USC § 80a-2 (a) (51) (A).

[6] *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 523 (1) (448 SE2d 271) (1994); see also *Carpenter v. Curtis*, 196 Ga. App. 234, 236-237 (395 SE2d 653) (1990).

[7] Id.

[8] 236 Ga. 862 (226 SE2d 49) (1976).

[9] Id. at 863.

ble on another security purchased pursuant to the Agreement.

> To effect a complete rescission, all the parties must be returned as nearly as possible to the status quo ante; there is no room for one party to have its cake and eat it, too. Ordinarily, then, one cannot in equity seek to rescind a contract [(here the sale of the IMRI stock)] on the ground of fraud, and at the same time retain the benefits derived from that contract [(here certain stock dividends)].[10]

In Georgia, partial rescission of a contract cannot occur absent mutual assent of the parties.[11] Moreover, GCA failed to enumerate as error the trial court's ruling that GCA could not effect a partial rescission. Thus, this Court is precluded from reviewing the propriety of that ruling.[12] Therefore, GCA's attempted rescission is invalid, and GCA is bound by the merger clause. It follows that the trial court correctly dismissed GCA's claims for securities fraud, common law fraud, negligent misrepresentation, and conspiracy against the seller.[13]

2. Our affirmance of the dismissal of GCA's claims against the seller defeats GCA's conspiracy claim against the broker. "A conspiracy is *a combination of two or more persons* to accomplish an unlawful end or to accomplish a lawful end by unlawful means."[14]

3. However, the trial court erred in dismissing GCA's fraud and misrepresentation claims against the broker. The broker cannot rely on the merger clause to bar those claims because the broker was not a party to the Agreement.

We will address GCA's claims of common law fraud and securities fraud together, as they involve similar elements.

> The elements essential to an action in tort for damages resulting from a material misrepresentation constituting fraud are: (1) that the defendant made the representations; (2) that at the time he knew they were false . . . ; (3) that he made them with the intention and purpose of deceiving the

---

[10] (Citations and punctuation omitted.) *Metter Banking Co. v. Millen Lumber &c. Co.*, 191 Ga. App. 634, 637 (382 SE2d 624) (1989).

[11] *Feely v. First American Bank &c.*, 206 Ga. App. 53, 57 (2) (b) (424 SE2d 345) (1992).

[12] *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999); see also *Schill v. A. G. Spanos Dev.*, 217 Ga. App. 260, 262 (457 SE2d 204) (1995) (issues not enumerated as error deemed abandoned on appeal).

[13] See *Hall v. Coram `Healthcare Corp.*, 157 F3d 1286 (11th Cir. 1998) (dismissal of complaint for failure to state a claim under section 10 (b) of the Securities Exchange Act of 1934 affirmed in part due to merger clause in settlement agreement).

[14] (Citation and punctuation omitted; emphasis supplied.) *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (1) (443 SE2d 833) (1994).

plaintiff; (4) that the plaintiff [justifiably] relied on such representations; [and] (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.[15]

To evaluate a claim of securities fraud under OCGA § 10-5-12 (a), we look to the similar elements a plaintiff must allege under section 10 (b) of the Securities Act of 1934:[16] "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury."[17] Scienter must be pleaded with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner.[18] " 'Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care. . . .' "[19]

To show justifiable reliance on the misrepresented or omitted information sufficient to constitute securities fraud, GCA must show that "with the exercise of reasonable diligence [it] still could not have discovered the truth behind the fraudulent omission or misrepresentation."[20] Similarly, the element of justifiable reliance under common law fraud requires GCA to prove that it exercised due care to discover the fraud.

> Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. Moreover, a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, representations of this nature must be inquired into and examined to ascertain the truth.[21]

In reviewing the grant of the broker's motion to dismiss, our inquiry is limited to whether, in light of the representations GCA made in the Agreement, any evidence could be introduced sufficient to warrant a recovery against the broker for fraud or negligent mis-

---

[15] (Punctuation omitted.) *Lister v. Scriver*, 216 Ga. App. 741, 745 (456 SE2d 83) (1995).
[16] 17 CFR § 240.10b-5 (1992); see *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 636 (6) (466 SE2d 872) (1995).
[17] *Bryant v. Avado Brands, Inc.*, 187 F3d 1271, 1281 (11th Cir. 1999).
[18] Id.
[19] Id. at 1282
[20] *Gochnauer v. A. G. Edwards & Sons*, 810 F2d 1042, 1047 (11th Cir. 1987).
[21] *Todd v. Martinez Paint & Body*, 238 Ga. App. 128, 129 (517 SE2d 844) (1999).

representation.

In the Agreement, GCA represented itself as an "accredited investor" and a "qualified purchaser." As such, the broker argues, GCA is held to the standard of a "sophisticated business [entity] from whom greater diligence is required before reliance upon representations may be considered justified."[22] Moreover, GCA warranted that it had access to, and an opportunity to inspect, all relevant information and make an informed investment decision concerning its acquisition of IMRI stock. Thus, the broker contends, the Agreement precludes GCA from showing that it justifiably relied on any statement made by the broker. "Questions of fraud, the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury."[23] In reviewing the dismissal of GCA's claims, we must accept as true GCA's allegation that the broker stated that IMRI "was the best company it had in its portfolio." At this procedural juncture we cannot conclude that the broker has demonstrated that GCA "could not possibly introduce evidence . . . sufficient to warrant a grant of the relief sought."[24]

Accordingly, the trial court erred in granting the broker's motion to dismiss GCA's claims of securities fraud, common law fraud, negligent misrepresentation, and attorney fees pertaining thereto for failure to state a claim upon which relief can be granted.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Miller, J., concur.*

DECIDED JULY 18, 2000 —
RECONSIDERATION DENIED AUGUST 4, 2000.

*Sutherland, Asbill & Brennan, Steven L. Polk, Lauren E. Wagner*, for appellant.

*Long, Aldridge & Norman, Terry R. Weiss, James T. Mast, Parker, Hudson, Rainer & Dobbs, David G. Russell, G. Wayne Hillis, Jr.*, for appellees.

---

[22] *William Goldberg & Co. v. Cohen*, supra, 219 Ga. App. at 631 (1) (a).

[23] (Citation and punctuation omitted.) *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 6 (2) (497 SE2d 616) (1998).

[24] (Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).