**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12819

_____

KEVIN JOYCE,

*Plaintiff-Appellant,*

*versus*

FOREST RIVER, INC.,
FREIGHTLINER CUSTOM CHASSIS CORPORATION,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-81262-RLR

_____

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

In June 2020, Plaintiff-Appellant Kevin Joyce purchased a Recreational Vehicle (RV) from Defendants-Appellees Forest River Inc. (Forest River) and Freightliner Custom Chassis Corporation

(Freightliner) (collectively, the manufacturers). Problems with the vehicle developed immediately and persisted for almost two years. Ultimately, Joyce took his claims to arbitration for relief under Florida Statute § 681.104, commonly known as Florida's Lemon Law. The arbitration board found in the manufacturers' favor, finding that Joyce failed to establish his entitlement to a refund under Florida Lemon Law. Joyce appealed that decision to the district court under Florida Statute § 681.1095(10)-(11). The district court affirmed the arbitration board. Joyce appealed the decision, arguing that the district court erred in requiring him to establish a presumption under Florida Statute § 681.104(3) and erred in finding no genuine issues of material fact based on the record.

After careful review and with the benefit of oral argument, we find that the district court erred in adding a requirement that Joyce meet a presumption under the statute. Yet even with this error, we affirm the district court's decision that Freightliner was entitled to summary judgment because Joyce failed to comply with other statutory requirements. But as to Forest River, the district court's error in adding a requirement necessitates reversal. When using the correct standard, there is a genuine issue of material fact precluding summary judgment, even with the district court properly deeming Forest River's facts as admitted.

## I.    Background

### a.  Factual History

On June 16, 2020, Joyce purchased an RV from Lazy Days RV in Wildwood, Florida. Forest River is the manufacturer

responsible for every part of the RV except the vehicle frame, known as the chassis. Freightliner is the manufacturer responsible for the chassis. Before purchasing the RV, Joyce was aware of issues with the back-up camera and steering wheel. Despite these issues, he purchased the RV and drove it from West Palm Beach, Florida, to his home in Boston, Massachusetts. During this drive, both headlights failed.

On July 15, 2020, Joyce took the RV to Camping World, an authorized service agent of Forest River, to address issues with the headlights, back-up camera, and living facilities. The RV remained at Camping World until August 21, 2020, for thirty-seven days. Forest River then instructed Joyce to bring the RV to Lazy Days in Florida for repair on the steering wheel, back-up camera, windshield leak, chassis, living facility components, and more. On September 10, 2020, Joyce delivered the RV to Lazy Days. The RV remained in Forest River's possession until November 4, 2020, for fifty-five days. On November 4, 2020, Lazy Days sent the RV to a Freightliner service shop for chassis work on the illuminated check engine light, where it was repaired after eight days of work.

On January 13, 2021, Forest River called Joyce and offered to bring the RV to their Indiana location for repairs. Joyce declined. In June 2021 and November 2021, Forest River again offered to repair the RV, and Joyce refused to authorize the repair. Then, in December 2021, Joyce's attorney sent a demand letter to Forest River, prompting them to offer to bring the RV in for repair for a fourth

time. Instead, Joyce sent Forest River and Freightliner Motor Vehicle Defect Notices, as required by statute, in February 2022.

On February 14, 2022, Forest River serviced the RV in Indiana, working on the back-up cameras, living facilities, and other issues for a total of 22 days.

On March 3, 2022, Lazy Days sent the RV to Freightliner to address a recall and illuminated check engine light for a total of five days. Finally, on April 21, 2022, Freightliner worked on the RV for the last time to address the valve stem stabilizers, illuminated check engine light, and an active low coolant for a total of five days. Since then, Joyce has not provided Forest River or Freightliner with the RV to complete any further repairs.

### b. *Procedural History*

Joyce submitted his dispute with Forest River and Freightliner to arbitration pursuant to Florida Statute § 681.1095. After a hearing, the arbitrator found that Joyce had not met his burden of eligibility for a refund and ordered limited repairs on the RV. Joyce timely appealed to the state court, after which the manufacturers removed the case to the Southern District of Florida.

After discovery, the manufacturers moved for summary judgment and filed Statements of Material Facts in support of their motions. The manufacturers argued against Joyce's statutory entitlement to a refund for his RV because of his failure to meet or exceed the statutory presumption of when "a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty."

The district court granted summary judgment for both manufacturers, affirming the arbitrator's decision. As to Forest River, the district court held that Joyce failed to carry his burden of proof in establishing a statutory presumption for when a refund or replacement is available. Forest River argued that the RV was serviced only three times and "not the minimum of four occasions for the same nonconformity required by the statutory presumption." Nor had Joyce calculated the number of out-of-service days the RV sustained for issues covered by the Lemon Law. The court found that Joyce did not properly respond to Forest River and identify the nonconformities or the isolated out-of-service days.

As to Freightliner, the court also found that Joyce failed to carry his burden of proof to show that the RV had been subject to a reasonable number of attempted repairs. Because Joyce did not take the RV to an authorized Freightliner repair shop for the same nonconformity at least four times or accumulate at least sixty out-of-service days, the court found that Joyce did not "establish[] the statutory presumption for entitlement for a refund or repair." Joyce timely appealed.

## II.    Statement of Material Facts

Joyce argues that the district court abused its discretion in enforcing the requirements of Local Rule 56.1 and deeming the manufacturers' Statements of Material Facts admitted. "We review a district court's application of its local rules for an abuse of discretion." *United States v. McLean*, 802 F.3d 1228, 1233 (11th Cir. 2015).

"The district court's interpretation of its own rules is entitled to great deference, and the challenging party bears the burden of showing that the district court made a clear error of judgment." *Id.*

In its Local Rules, the Southern District of Florida requires that a motion for summary judgment be accompanied by a Statement of Material Facts listing all facts not genuinely disputed. S.D. Fla. L.R. 56.1(a)(1). The opponent must clearly challenge any material facts in his reply Statement and then may assert additional facts. S.D. Fla. L.R. 56.1(a)(2). The form requires the opponent to use "as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.'" S.D. Fla. L.R. 56.1(b)(2)(B). If the opponent fails to do so, the material facts "may be deemed admitted unless controverted by the other party's Statement of Material Facts." S.D. Fla. L.R. 56.1(c). If the party fails to comply with the rule, "the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate." S.D. Fla. L.R. 56.1(d).

Here, when Joyce submitted his first Statement of Material Facts, the district court found that it was unresponsive and violated Local Rule 56.1 because he did not "clearly challenge" the manufacturers' material facts by stating whether they were disputed or undisputed. Then, after the briefing period had concluded and without requesting leave from the court, Joyce filed a second Statement of Material Facts. The court decided not to grant leave for an

amended filing because Joyce did not request leave and the amendment would prejudice the manufacturers. Additionally, the court found that the late filing was still deficient, as it was responsive to only one manufacturer.

Joyce argues that the court misapplied Local Rule 56.1 or abused its discretion in admitting the manufacturers' Statement of Facts. Joyce contends that certain facts should not have been admitted because the record evidence does not support the manufacturers' assertions. He points to multiple paragraphs of admitted facts he believes are in dispute, giving alternative answers for the manufacturers' assertions.

We disagree. As an initial matter, the challenging party—here, Joyce—bears the burden of showing that the court made a clear error of judgment. Joyce identifies multiple assertions that were not supported by the record, but his arguments only amount to quibbling with how the manufacturers phrased the statements and not whether the facts were controverted by the record.

First, Joyce believes that the record evidence does not support that the "windshield, back-up camera, headlight, and steering wheel" are attributable only to Forest River. However, he notes nothing from the record that suggests that this material fact is controverted.

Next, he takes issue with the manufacturers' assertion that Joyce "did not call or otherwise put Freightliner on notice of any problems." He admits that he did not know that he had to report his issues to Freightliner directly and points out that he did put

Forest River on notice. Joyce's misplaced reliance on Forest River does not change the fact that he did not personally put Freightliner on notice. Nothing else from the record suggests that this fact is in dispute.

Next, he takes issue with the manufacturers' assertion that he "continued to drive the RV and safely reached his destination." He argues that he had no choice but to drive the RV "despite its unsafe nature." His opinion on whether the RV itself was safe does not dispute the manufacturers' claim that he indeed drove the RV and arrived safely in Massachusetts. Joyce offers nothing further from the record to suggest that he did not drive the RV.[1]

Lastly, he takes issue with the manufacturers' assertion that he "admitted that the RV had only been seen for repairs at an authorized service dealer for Forest River on two occasions." He argues instead that he had no knowledge of "whether any facility was authorized" and that he "provided reasonable opportunity" for repair of the RV. Yet nothing in his own statement of material facts suggests that the RV was seen by an authorized Forest River service dealer on any occasion other than July 15, 2020, and September 10, 2020, before the Motor Vehicle Defect Notice was sent. Joyce's argument is misplaced. He disputes the relevant out-of-

---

[1] In the same section, Joyce takes issue with the manufacturers' assertion that "the RV's issues [did not prevent] Mr. Joyce from driving it." Yet he does not address this any further in the argument that follows.

service days, but this in no way undermines the fact that the RV was only seen on two occasions prior to notice.

Joyce filed a statement of facts that violated the Local Rules. In doing so, he opened the door for the court to admit any undisputed facts that were not controverted by the record. Without evidence that the admitted facts were controverted, Joyce has failed to show how the district court abused its discretion. Joyce also failed to properly amend his statement of facts when given the chance. Remaining in violation of the rule allowed the court to enter "any sanctions they deem appropriate." Indeed, the Local Rule explicitly states that the court "may strike the Statement" altogether. Joyce's dislike of the consequences of his improper filings alone does not create a viable claim that the district court abused their discretion. Because Joyce fails to show that the court made a clear error of judgment, we affirm as to this issue.

### III.    Florida Lemon Law

Next, Joyce argues that the district court did not apply the proper standard under the Florida Lemon Law. "We review questions of law *de novo* and factual findings for clear error. We review *de novo* a district court's interpretation of a state law." *Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007) (internal citation omitted).

Joyce argues that the district court misconstrued the statutory presumptions contained in Section 3 of the Florida Lemon Law as "*mandatory* requisites to relief." Rather than allowing him to avail himself of either the "repair" or the "days-out-of-service"

presumptions set forth in § 681.104(3), he believes that the district court incorrectly required him to prove one of the two presumptions. The manufacturers, on the other hand, argue that the district court applied the correct standard and Joyce failed to carry his burden of showing he was entitled to relief.

Very few cases have addressed the relationship between the requirements and presumptions of the Florida Lemon Law. But the few that do help to illustrate that the presumptions available under Section 3 are not mandatory. We start by going through the subsections of Florida Statute § 681.104.

Section 1(a) and 1(b) of the Lemon Law determine the timeline that triggers the consumer's right to give notice, i.e., the right to send a written Motor Vehicle Defect Notice to the manufacturers. *See BMW of N. Am., Inc. v. Singh*, 664 So. 2d 266, 269 (Fla. Dist. Ct. App. 1995) (en banc). Before notice can be sent to the manufacturer, three attempts must have been made to repair the same nonconformity, *or* the motor vehicle must have been out of service for a cumulative total of fifteen days by reason of repair. After this notice has been sent, the manufacturer receives a "final attempt to cure the nonconformity." These steps must be satisfied before further relief can be sought.

Once Section 1 has been satisfied, Section 2 outlines the path to relief. If the manufacturer cannot conform the motor vehicle to the warranty after a "reasonable number of attempts," the manufacturer must repurchase the vehicle or refund the purchase price. Section 2 does not define what constitutes a "reasonable number."

Section 3 explores the meaning of "reasonable number of attempts." It states that "[i]t is presumed that a reasonable number of attempts have been undertaken" if either Section 3(a) is satisfied ("the same nonconformity has been subject to repair at least three times by the manufacturer or its authorized service agent" and such nonconformity continues to exist); or Section 3(b) is satisfied ("[t]he motor vehicle has been out of service by reason of repair of one or more nonconformities by the manufacturer, or its authorized service agent, for a cumulative total of . . . 60 or more days in the case of a recreational vehicle."). Both Sections 3(a) and 3(b) require that the manufacturer has had at least one chance to inspect or repair the vehicle following written Motor Vehicle Defect Notice from the consumer.

The manufacturers argue that the presumptions outlined in Section 3 are in fact mandatory. We disagree. It is clear, from the statute's text and limited caselaw, that if Joyce could satisfy the three repair attempts *or* the 60 days out-of-service, "the presumption [of reasonableness] is triggered and the manufacturer's duty to repurchase the vehicle arises." *BMW of N. Am., Inc.*, 664 So. 2d at 269; *see also Richter v. Monaco Coach Corp.*, 2009 WL 1537894, at *3 (M.D. Fla. June 2, 2009) (explaining that three repair attempts plus a final attempt create a "presumption" that a "reasonable number of attempts have been undertaken"). [2]

─────────────────────

[2] Resolved Florida Lemon Law cases from the Florida New Motor Vehicle Arbitration Board (NMVAB) overwhelming conclude that the presumptions are not mandatory. *See Garcia v. Toyota Motor Sales*, USA, 2007-0215/MIA (Fla.

There is no suggestion, in case law or otherwise, that these presumptions are mandatory. If Joyce can show that the RV repairs meet the threshold outlined in Section 3, he benefits from a presumption of reasonableness that the manufactures can then rebut. *See Richter*, 2009 WL 1537894, at *3. It does not follow, however, that failing to reach the threshold of Section 3 is fatal to a consumer's claim for relief. The statute simply asks that a consumer give the manufacturer a "reasonable number of attempts." The statute could have explicitly stated what the meaning of "reasonable" was. But it does not. Instead, the statute offers two examples of what reasonableness *could* look like. The presumptions found in Section 3 are examples, not requirements.

State courts in jurisdictions with similar laws have concluded the same. For example, a state appellate court in Maryland explained that these presumptions "do[ ] not establish minimum requirements that must be met before a [consumer] may seek a remedy. . . . [T]he [consumer] may show that a reasonable number of repair attempts has been permitted without the benefit of the presumption[s]." *Murphy v. 24th Street Cadillac Corp.*, 727 A.2d 915, 922 (Md. App. 1999) (citing cases to the same effect from California, Connecticut, Texas, and Virginia).

The district court mistakenly treated the presumptions of Section 3 as mandatory requirements on the road to relief. Thus, it

---

NMVAB June 11, 2007); *Diez v. Volkswagen/Audi of America, Inc.,* 2007-0022/MIA (Fla. NMVAB Feb. 28, 2007); *Baznik v. Nissan Motor Corp.*, 2005-0856/ORL (Fla. NMVAB Dec. 19, 2005).

is necessary to return to the facts before us to determine whether, under the proper standard, Joyce has satisfied the requirements at this stage.

## IV.    Genuine Issues of Material Fact

Joyce argues that the district court erred in granting summary judgment for the manufacturers because there remains a genuine issue of material fact under the proper Florida Lemon Law standard. "We review grants of summary judgment de novo." *King v. King*, 69 F.4th 738, 742 (11th Cir. 2023) (per curiam). Summary judgment is appropriate when there are no genuine disputes as to any material fact, even when the evidence is viewed in the light most favorable to the non-movant. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non-movant on the issue. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284–85 (11th Cir. 1997).

### a. Forest River

After applying the correct legal standard, it remains unresolved whether Joyce's RV was seen for a reasonable number of repairs by Forest River. Forest River argues that there is no dispute over the number of days or times that the RV was seen for repair. We disagree for two reasons.[3]

---

[3] It is undisputed in the record that Joyce satisfied the initial standard of Section 1(b)—fifteen out-of-service days—before sending notice to Forest River in February 2022.

First, even if Joyce cannot prove the presumptions found in Sections 3(a) or 3(b), the jury could still find that he otherwise satisfied the reasonableness standard. As explained above, the presumptions are not mandatory. If we take Forest River's argument to be true that there were only twenty-two out-of-service days, a jury could still find it constitutes a "reasonable number of attempts" under Section 2(a) of the Lemon Law.

Second, there is a colorable argument that the RV did in fact reach the sixty out-of-service days threshold of Section 3(b).[4] After sending written notice to Forest River, the RV was repaired one more time on February 14, 2022.[5] This satisfies the additional repair standard of Sections 1(b) and 3(b) and preserves Joyce's claim for relief. The district court determined that Joyce failed to meet the threshold of Section 3(b) because he did not isolate which

[4] It is not in dispute that Joyce failed to reach the Section 3(a) presumption of three repair attempts plus a final repair, as the RV was only seen three times total.

[5] The district court and arbitration board found that Joyce's claim was not eligible for relief because the manufacturer cured the nonconformity during a final repair opportunity. The record reflects, however, that the RV continued to have issues with the check engine light, windshield leak, back-up camera, left headlight, and steering wheel as of March 2022. Additionally, multiple arbitration cases suggest "whether the nonconformity was corrected [is] not relevant to the application of the days-out-of-service presumption, since it is the time out of service for repair, and not the inability to cure, that controls." *Toledo v. Mercedes-Benz*, 2005-0148/MIA (Fla. NMVAB Ap. 12, 2005); *see also Pearson v. Nissan Motor Corp., U.S.A.*, 2002-1029/STP (Fla. NMVAB Dec. 17, 2002) (finding no requirement in the statute that the nonconformities continue to exist after the days out of service).

nonconformities were repaired when. But there is no suggestion in the statute or case law that Joyce is required to do so.[6] The language of Section 2(a) refers to "any nonconformity" and the language of Section 3(b) includes "out of service by reason of repair of *one or more* nonconformities." (emphasis added). An out-of-service day is "[a]ny day, including weekends and holidays, when the motor vehicle is left at an authorized service agent or manufacturer's designated repair facility for an examination or repair of one or more nonconformities." Fla. Admin. Code r. 2-30.001(2)(c). The RV remained at Forest River's authorized repair shops for around 114 days in total. Thus, there remains a genuine dispute of whether the sixty days required to receive the Section 3(b) presumption was met.[7]

---

[6] The district court based its conclusion on the arbitration board's analysis. The board relied on a previous arbitration decision, *Henson v. Fleetwood*, Case No. 200622 (Fla. NMVAB, Nov. 24, 2006), which suggests only that the consumer may not aggregate out-of-service days from multiple manufacturers. Joyce has not done so. Furthermore, a review of the arbitration decisions from 1998 onward suggests that the consumer does not have a statutory duty to isolate days spent on nonconformities, as long as the repair periods included a nonconformity. *See Patrick v. Blue Bird Body Co. and Spartan Motors, Inc.*, 1998-1152/FTM (Fla. NMVAB 11 Mar. 10, 1999); *McVea v. American Motor Honda Co.*, 2006-0793/JAX (Fla. NMVAB Mar. 1, 2007).

[7] At oral argument, counsel for Forest River could not provide the panel with the specific number of out-of-service days when initially prompted. *See* Oral Argument at 22:50, *Joyce v. Forest River, Inc.*, No. 24-12819 (11th Cir. Oct. 9, 2025). This further suggests that the number of out-of-service days remain in dispute.

Forest River argues that Florida New Motor Vehicle Arbitration Board Emergency Orders 20-002 and 20-006 function in their favor to exclude the time frames from March 9, 2020 through November 10, 2020. This argument underscores another genuine dispute of a material fact. The COVID-19 period is not automatically excluded. Forest River must clearly demonstrate *how* the pandemic affected the repairs to the RV in 2020. *See Black v. BMW of N. Am., LLC*, 2021-0303/MIA (Fla. NMVAB Mar. 30, 2022) (rejecting the manufacturer's COVID-19 argument without specific evidence that the pandemic delayed the repairs). Forest River has not provided sufficient uncontroverted facts to support its argument for summary judgment. Thus, it should be left to the jury to decide if the pandemic caused significant enough delay to warrant exclusion of that time period.

When all facts and inferences are viewed in the light most favorable to Joyce, there remains a genuine dispute of a material fact as to whether Joyce has shown that there was a reasonable number of attempts to repair the RV under Section 2 of the Florida Lemon Law. Thus, we reverse the district court's grant of summary judgment in favor of Forest River.

### b. *Freightliner*

The story is different for Freightliner. Freightliner argues that Joyce has not met his burden under the statute for out-of-service days or repair attempts. We agree.

Unlike with Forest River, Joyce sent the written Motor Vehicle Defect Notice to Freightliner prematurely. Freightliner had

only seen the RV once in November 2020 for eight days. This fact is not disputed by Joyce. Because this fails to satisfy either the three repair standard of Section 1(a) or the fifteen day standard of Section 1(b), Joyce is not entitled to relief. Unlike the flexible definition of reasonable in Sections 2 and 3, Section 1 outlines strict thresholds to relief. Failure to meet them terminates the analysis before Section 2 is ever reached. There are no other facts in dispute that contest Joyce's satisfaction of Section 1(a) or 1(b).

Because Joyce fails to satisfy the requirements of Section 1 of the Florida Lemon Law, and no material fact is in dispute, we affirm the district court's granting of Freightliner's motion for summary judgment. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023) (This court can "affirm the judgment on any ground supported by the record.").

## V. Conclusion

We find that the district court erred in adding a mandatory requirement that Joyce meet the presumptions under Florida's Lemon Law, § 681.104. Despite this error, we affirm the district court's decision with respect to Freightliner because Joyce prematurely sent notice, failing to comply with the statute. However, we reverse the district court's decision as to Forest River because a genuine dispute of a material fact remains.

**AFFIRMED IN PART AND REVERSED IN PART.**